UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                                              :
BEVON BURGAN,                                                 :
                                                              :   22 Civ. 8626 (AKH)
                                           Petitioner,        :
          -against-                                           :
                                                              :   **ORDER AND OPINION**
                                                              :   **DENYING WRIT OF HABEAS**
LYNN LILLEY, SUPERINTENDENT,                                  :   **CORPUS**
                                                              :
                                           Respondent.        :
                                                              :
------------------------------------------------------------- X

ALVIN K. HELLERSTEIN, U.S.D.J.:

  On January 10, 2014, Petitioner Bevon Burgan ("Petitioner" or "Burgan") was convicted of first-degree manslaughter, N.Y. Penal Law § 125.20, by jury verdict in the New York Supreme Court, Bronx County. He was sentenced to twenty years' imprisonment to be followed by five years of post-release supervision. He remains in custody pursuant to that sentence. Petitioner now brings a habeas corpus petition pursuant to 28 U.S.C. § 2254 on the following grounds: (1) ineffective assistance of counsel for failure to "tell Burgan that the decision on whether to accept [a] seven-year plea offer was his and for failing to advise him on it" ("Ground One"), ECF No. 17 ("Petition") at 50; (2) ineffective assistance of counsel at trial ("Ground Two"), *id.* at 58; and (3) the prosecution knowingly "presenting false and misleading testimony" ("Ground Three"), *id.* at 74. For the reasons discussed below, Burgan's § 2254 petition is denied.

## BACKGROUND

  In the early hours of August 4, 2008, Petitioner and three codefendants, Doran Allen, Devin Alexander, and Pierre Hunt, participated in a shooting outside of a nightclub in

1

Bronx County, fatally wounding one victim and injuring two others. According to Hunt's testimony, two weeks before the shooting, the deceased victim, Charles Sims, had shot an acquaintance of the defendants' who was known to them as "Big Bro." Trial Transcript at 714-22, *People v. Bevon Burgan*, 152 A.D.3d 401 (Bronx). Following that incident, Hunt, Burgan, Alexander, and others began carrying guns in case they encountered Sims. *Id.* at 1557-62. In the early morning of August 4 while Petitioner, Big Bro, Hunt, and Alexander were together, Big Bro told Hunt that he had received a phone call telling him that Sims was at the Bada Bing club on the corner of Lafayette and Garrison Avenues. *Id.* at 1563-64, 2813-16. Allen arrived shortly thereafter, and the group departed to go to the club. *Id.* at 2822-27. When Hunt asked Big Bro where they were going, Big Bro said, "I just told you Son is there. I'm going to handle it." *Id.* 2827. Allen drove the car with Petitioner in the passenger seat, Hunt seated behind Allen, and Alexander seated behind Petitioner. *Id.* at 1556-67. Hunt was armed with a .32 caliber gun, Alexander with a .9 caliber gun, and Petitioner with a .45 caliber gun. *Id.* at 1568, 1573. Big Bro drove in his own car to the club.

        Hunt testified that Allen stopped the car on Garrison Avenue, along the side of the club, while Big Bro drove to a nearby parking lot. *Id.* at 1574-75, 1579. Two men stood next to a truck parked to the front of Allen's car. *Id.* at 1600-01, 1606. Sims and another man stood on the corner of Garrison and Lafayette. *Id.* at 1606. After a short time, the two men got back into the truck and drove away. *Id.* at 1608, 2843. Allen then received a call from Big Bro and said "Yo, that's him" and either "you already know what it is" or "ya all know." *Id.* at 1609, 1804, 2844. Hunt left the car, ran up to Sims and the other man, and fired his weapon three to four times. *Id.* at 1609, 1611. Alexander chased after the men. *Id.* at 1922. A surveillance video shows a man, whom Hunt identified as Alexander, shooting the two men on the ground in front

2

of the club. *Id.* at 1610. Hunt testified that Burgan got out of the vehicle but "never really left the side of the car." *Id.* at 1810.

Immediately following the shooting, Burgan, Hunt, and Alexander got back into the car, and Allen drove off. *Id.* at 1626-30. Following a high-speed chase, police boxed in Allen's car. *Id.* at 1636-37. Hunt placed the .32 caliber gun under his seat and fled. *Id.* at 1431-46. Police arrested Allen and Petitioner, who remained in the car. *Id.* at 1259-60. Police then found a .45 caliber gun under Petitioner's seat. *Id.* at 1994-95. Police apprehended Alexander shortly thereafter and recovered a .9 caliber gun nearby. *Id.* at 1446-68. Hunt turned himself in eleven days later, on August 15, 2008. *Id.* at 1636-37.

An initial complaint charged Petitioner and two codefendants with murder, attempted murder, and gun charges. Petition, Ex. A. The prosecutor withdrew the homicide counts against Petitioner and the grand jury hung on the gun charges. Petitioner's counsel, Percival Clarke, successfully moved to dismiss the complaint on statutory speedy trial grounds in March 2009. Petition, Ex. D.

In 2011, the prosecution again brought the case before a grand jury, which indicted Petitioner for murder, attempted murder, assault, and gun possession. Clarke moved to dismiss the indictment based on the previous dismissal of the case in 2009. The court denied the motion and affirmed its decision on reargument. Petition at 6-7.

At trial, the prosecution's case was strong. In addition to Hunt's testimony, which was given pursuant to a cooperation agreement, the prosecution offered eyewitness testimony from Terrence Lewis, a bouncer at Bada Bing, and Michael Ramsay, a mechanic who stood on Garrison Avenue facing the side of the club. The prosecution also offered extensive forensic evidence, including Petitioner's palm print on the .45 caliber gun and surveillance footage of the

3

front of the club. The jury convicted Petitioner of first-degree manslaughter and acquitted him of the remaining charges. State Record ("S.R.") 4063-76. He was later sentenced to twenty years' imprisonment, to be followed by five years of supervised release.

On direct appeal to the First Department, Petitioner argued that (i) the evidence was insufficient to demonstrate that Petitioner acted in concert with the shooters and the verdict was against the weight of the evidence, (ii) trial counsel was ineffective for failing to introduce evidence contradicting Hunt's testimony that Petitioner left the car and for not requesting an instruction that Hunt was an accomplice as a matter of law; (iii) the prosecutor allegedly committed misconduct in his opening statement and in summation; (iv) the prosecutor allegedly violated N.Y.C.P.L. § 190.75 by resubmitting the homicide charges to a grand jury without prior court authorization; (v) the prosecutor failed to investigate the testimony of codefendant Hunt despite knowing it might be false; and (vi) Petitioner's sentence was excessive. The First Department unanimously affirmed the judgment of conviction. ECF No. 18-1 at 8. Following that court's denial of reconsideration, Burgan moved pursuant to N.Y.C.P.L. §§ 440.10 and 440.20 to vacate his judgment and set aside his conviction. *Id.* at 10. The motion court denied Petitioner's claims. ECF No. 18 at 4. That court also denied Petitioner's motion to appeal this ruling. *Id.*

On October 11, 2022, Petitioner filed this habeas corpus petition. For the reasons discussed below, the petition is denied.

## DISCUSSION

### I. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, a habeas corpus petition shall not be granted unless the adjudication of the claim by state court

4

either (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1-2).

A petitioner can show that a state court's decision is contrary to clearly applicable federal law by showing either that (1) the conclusion of law directly contradicts a holding of the Supreme Court, or (2) that, when presented with facts materially the same as that of the Supreme Court precedent, the state court reached an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A petitioner can demonstrate that a state court decision was based on an unreasonable application of federal law by proving that the state court unreasonably applied federal legal principals to the facts of the case before it using some amount of incorrectness beyond error. *Evans v. Fischer*, 712 F.3d 125, 133 (2d Cir. 2013).

This is a highly deferential standard; indeed, it is one that presumes the state court decision was correct. 28 U.S.C. § 2254(e)(1). The petitioner may only overcome this presumption by clear and convincing evidence. *Id.*

## II. Analysis

### A. Grounds One and Two: ineffective assistance of counsel claims under the Sixth Amendment

Petitioner argues that he was denied effective assistance of counsel in violation of his Sixth Amendment rights when his attorney (1) instructed him not to take the government' plea deal because he would not get convicted, and if he did, they would appeal the conviction; and (2) failed to take certain strategic actions at trial which harmed Burgan's case.

5

To prevail on an ineffective assistance of counsel claim, a defendant has the burden of: (i) showing that his representation "fell below an objective standard of reasonableness" under "prevailing professional norms[,]" thereby overcoming the "strong presumption" that his counsel's conduct was reasonable and (ii) "affirmatively prov[ing] prejudice,"—that is, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 693–94 (1984); *accord. United States v. De La Pava*, 268 F.3d 157, 163 (2d Cir. 2001).

Under the first prong of the *Strickland* analysis, the reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that there are countless ways to provide effective assistance in any given case and that even the best criminal defense attorneys would not defend a particular client in the same way." *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990). A defendant's subjective belief that his trial counsel's strategic choices were inadequate, without more, is insufficient. *United States v. Sanchez*, 790 F.2d 245, 253 (2d Cir. 1986).

To satisfy the second prong, the defendant must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 446 U.S. at 693–94. A defendant cannot establish prejudice by merely showing that counsel's errors had "some conceivable effect" on the result; the question is whether the errors undermine the reliability of the proceeding. *See id.* at 693.

### 1. Ground One: Instructing Burgan to reject the plea agreement

Petitioner argues his representation during the plea negotiation phase was deficient because Clarke told him to reject a seven-year offer. He states that if Clarke had instructed him to take such an agreement, he would have done it. But because of Clarke's comments regarding the

6

likelihood of winning the case, as well as his emphasis on the availability of appeal, Burgan opted not to take the plea. Petitioner's claims regarding representation during the plea-bargaining phase are not cognizable and do not satisfy Strickland.

To bring an ineffective assistance of counsel claim concerning the plea-bargaining stage, a formal plea offer must have been extended to the defendant. *Lafler v. Cooper*, 566 U.S. 156, 168 (2012) ("[i]f no plea offer is made . . . the issue [of counsel's effectiveness] simply does not arise."); *Mavashev v. United States*, No. 11-CV-3724 DLI, 2015 WL 1508313, at *11 (E.D.N.Y. Mar. 31, 2015) ("Any attempt to extend *Lafler* to an informal plea offer must be rejected, as the distinction between formal plea offers and informal plea offers is significant.").

There is no mention on the record of a formal seven-year plea agreement. Earlier in the pretrial process, the prosecution had formally offered Clarke a ten-year plea. However, no proposal for a seven-month agreement was ever actually made to the Petitioner by the government. Rather, the presiding justice, Justice DiMango mentioned a seven-year offer that the prosecution had discussed with *her*, but never formally brought to the Petitioner. Petition at 13. Petitioner admits that this seven-year deal was merely an effort by Justice DiMango that the prosecutor never signed onto: it writes that Justice DiMango repeatedly asked the prosecutor for a seven-year deal, which the prosecutor rejected in favor of a ten-year deal. Petitioner's Memo in Support at 49. After more evidence came in against Petitioner, Justice DiMango mentioned only the ten-year plea agreement, explaining that it was still on the table, but never mentioned a seven-year agreement again. *Id.* In a postconviction hearing, the state court found that the prosecutor in Burgan's case never consented to a seven-year plea deal. People's Memo in Opp. at 44. Without the government's assent, there cannot have been a formal plea offer, and without

7

a formal plea offer of seven years, Burgan cannot make a case for ineffective assistance of counsel by discouraging him from taking a seven-year deal.

Second, Petitioner's claim fails because Clarke's conduct during the plea negotiations was objectively reasonable in satisfaction of *Strickland*. Clarke provided notice to the Petitioner of formal plea offers by the Government. He also, upon his own professional experience, advised Petitioner that he believed trial would be a viable option for them, as the defendants were all being tried separately and some of the counts against Petitioner appeared to be weak. This belief was not baseless either—Petitioner was acquitted of multiple counts, including murder, and was instead only convicted of manslaughter. Petitioner testified that he was familiar with how plea bargaining worked, as he had pled guilty in previous criminal matters. He also never asked Clarke to seek a plea agreement for him, despite the extensive conversations the two had about the litigation. Overall, Clarke had good reason to believe trial could be fruitful for Petitioner, and never forced Petitioner into or out of any decisions which were rightfully his.

## 2. Ground Two: ineffective assistance of counsel at trial

Petitioner additionally argues that Clarke failed to act in accordance with objective standards of conduct during the trial itself. Among the issues Burgan takes with Clarke's representation are the failure to introduce John Acheson's eyewitness report to Officer Wilson; the failure to impeach Ramsay with his DD-5 statements; the failure to introduce a completely redacted DD-5 of a different, unnamed witness, who later also turned out to be Acheson; and the failure to demonstrate that Hunt had animus towards Burgan, therefore giving him reason to lie and implicate Burgan. Petition at 61-67.

Like the interim court, I conclude that trial counsel was not deficient in making the strategic choices of which Petitioner complains. "The decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess." *Greiner v. Wells*, 417 F.3d 305, 323 (2d Cir. 2005). Here, Clarke's choice not to introduce as witness testimony the two statements made by Acheson is just the kind that "is ordinarily not viewed as a lapse in professional judgment," even if the testimony might offer exculpatory evidence. *Id.* In light of this, I find that the state court did not unreasonably apply *Strickland* in determining that trial counsel's failure to utilize certain witness testimony and to fully impeach Ramsey did not amount to ineffective assistance of counsel. The state court clearly stated its reasons for why it held Clarke's representation to be adequate. It described Clarke's decisions to be "garden variety examples of trial strategy" that do not meet the *Strickland* standard and discussed how Burgan failed to show an absence of strategic or other legitimate explanation for those decisions. ECF No. 17-16 at 15. I hold this to have been a reasonable application of the *Strickland* standard.

Additionally, it is highly improbable that, even had these failures by Clarke been objectively unreasonable, they would have prejudiced the Petitioner. There was significant evidence demonstrating Burgan's involvement with the killing of Sims and the wounding of Aquino. Multiple eyewitness accounts place him at the scene, his palm print was found on the .45 caliber gun the police recovered from the car the co-defendants were all riding in, and he was in the car that matched the description of the eyewitnesses when the police apprehended the group. Petition at 16-17. Under the Second Circuit's precedent, courts "generally requir[e] some objective evidence other than defendant's assertions to establish prejudice. *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003). Here, Petitioner has failed to make any objective

9

showing that the outcome of his trial would have been different if Clarke had introduced Acheson's DD-5 statements, called other witnesses, or drawn more direct attention to impeachment evidence of prosecution witnesses. Accordingly, Burgan fails to establish the second prong of the *Strickland* standard.

## B. Ground Three: intentional presentation of false information by the prosecution

Finally, Petitioner accuses the trial prosecutor of misconduct, alleging that he knowingly permitted Hunt to give false testimony and Ramsay to give inaccurate testimony. Petition at 74. A state conviction violates due process where it is "obtained through the knowing use of false evidence." *Miller v. Pate*, 386 U.S. 1, 7 (1967). To establish such a claim, a defendant must show "(1) there was false testimony, (2) the Government knew or should have known that the testimony was false, and (3) there was any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Helmsley*, 985 F.2d 1202, 1205-06 (2d Cir. 1993). Petitioner fails to make these showings. As to Hunt's testimony, as the state court held, evidence corroborating Hunt's testimony was well established in the record, making it unlikely that Assistant District Attorney Gradinger believed or should have believed the information was false. ECF No. 17-16 at 13 and ECF No.18-2 at 51-52, n. 47. Moreover, minor inconsistencies in a witness's testimony, like those Petitioner points out in Hunt's testimony, do not amount to perjury, nor to a prosecutor's knowledge of any falsities. *See Dansby v. United States*, 291 F.Supp. 790, 793-94 (1968). As to Ramsay's testimony, Petitioner provides no basis for the Court to believe ADA Gradinger knew Ramsay was mistaken in his testimony, much less that ADA Gradinger "prodded Ramsay into giving this incorrect testimony," other than the fact that when closely compared, Hunt's and Ramsay's testimonies conflicted as to which of the defendants' car doors opened at the shooting. Petition at 75. This is simply not enough evidence

10

to prove that Ramsay's testimony was incorrect, nor that ADA Gradinger knew or had reason to know it was incorrect. The 440 court's decision that the prosecutor did not knowingly present false information was therefore reasonable, and I affirm.

## CONCLUSION

Because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," no fact hearing is necessary. 28 U.S.C. § 2255(b). Burgan's petition for a writ of habeas corpus is denied on all claims. I decline to issue a Certificate of Appealability because Petitioner has "not made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and because Petitioner has failed to demonstrate a denial of a right that reasonable jurists would find debatable. *See Slack v. McDaniel*, 529 U.SS. 473, 478 (2000). The Clerk shall terminate the case.

SO ORDERED.

Dated:    March 6, 2024
          New York, New York

ALVIN K. HELLERSTEIN
United States District Judge